UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 1:21-cv-4018 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| LORAL SPACE & COMMUNICATIONS | : **SECURITIES EXCHANGE ACT OF** |
| INC., MARK H. RACHESKY, M.D., | : **1934** |
| MICHAEL B. TARGOFF, JOHN D. | : |
| HARKEY JR., ARTHUR L. SIMON, JOHN | : **JURY TRIAL DEMANDED** |
| P. STENBIT, and JANET T. YEUNG, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Loral Space & Communications Inc. ("Loral or the "Company") and the members Loral's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Loral and Telesat Corporation and its affiliates ("Telesat").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form F-4 (the "Registration Statement") to be filed on April 26, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Combination Sub Corporation ("Merger Sub"), a wholly owned subsidiary of Telesat, will merge with and into Loral with Loral surviving as a wholly owned subsidiary of Telesat Partnership LP, another affiliate of Telesat (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Loral stockholder will receive either: (i) one newly issued Class A unit of Telsat Partnership if the Loral stockholder can demonstrate it is Canadian and otherwise one newly issued Class B unit of Telesat Partnership; or (ii) one newly issued Class A common share of Telesat if the Loral stockholder can demonstrate it is Canadian and otherwise one newly issued Class B common share of Telesat Corporation (the "Merger Consideration").

3. As discussed below, Defendants have asked Loral's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor LionTree Advisors LLC ("LionTree") in support of its fairness opinions.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Loral's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Loral is headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Loral stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Mark H. Rachesky, M.D. has served as a member of the Board since November 2005 and is the Non-Executive Chairman of the Board.

11. Individual Defendant Michael B. Targoff has served as a member of the Board since November 2005.

12. Individual Defendant John D. Harkey has served as a member of the Board since November 2005.

13. Individual Defendant Arthur L. Simon has served as a member of the Board since November 2005.

14. Individual Defendant John P. Stenbit has served as a member of the Board since June 2006.

15. Individual Defendant Janet T. Yeung has served as a member of the Board since May 2015.

16. Defendant Loral is a Delaware corporation and maintains its principal offices at 600 Fifth Avenue, New York, New York 10020. The Company's stock trades on the NASDAQ Stock Exchange under the symbol "LORL."

17. The defendants identified in paragraphs 10-15 are collectively referred to as the "Individual Defendants" or the "Board."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.  The Proposed Transaction**

19. Loral a satellite communications company, provides satellite-based communications services to the broadcast, corporate, and government customers worldwide. As of December 31, 2020, the company provided satellite services to its customers through a fleet of 15 in-orbit geostationary satellites; and owned the Canadian Ka-band payload on the ViaSat-1 satellite. It also offers video distribution and direct-to-home (DTH) video, as well as end-to-end communications services using satellite and hybrid satellite-ground networks; and broadcast services, including DTH, video distribution and contribution, and satellite transmission services for the broadcast of video news, sports, and live event coverage. In addition, the company provides telecommunication carrier and integrator services; maritime and aeronautical services; satellite services to the Canadian government; two-way broadband Internet services; communications services to oil and gas and mining industries; and satellite operator services. Further, it is involved

4

in the installation and maintenance of the end user terminal; and provision of satellite capacity and other network elements. Additionally, the Company offers consulting services related to space and earth, government studies, satellite control services, and research and development; and X-band satellite services. Loral was founded in 1996 and is headquartered in New York, New York.

20. On November 24, 2020, the Loral announced that it had entered into the Merger Agreement with Telesat:

> **NEW YORK – November 24, 2020 –** Loral Space & Communications Inc. (NASDAQ:LORL) today announced that it has entered into a definitive agreement with Public Sector Pension Investment Board (PSP Investments) and Telesat Canada (Telesat) to combine Loral and Telesat into a new Canadian public company (New Telesat). Upon closing of the transaction, the stockholders in Loral, together with PSP Investments and certain current and former management shareholders of Telesat, will beneficially own all of the equity in New Telesat in approximately the same proportion as their current, indirect ownership in Telesat. Loral stockholders not affiliated with the funds managed by MHR Fund Management LLC (MHR Funds) will beneficially own 26.1% of the economic interests in New Telesat, with the MHR Funds, PSP Investments and management shareholders of Telesat beneficially owning the remaining 36.6%, 36.7% and 0.7%, respectively, of the economic interests in New Telesat (such percentages have been subjected to rounding adjustments). New Telesat shares will initially be listed on the Nasdaq Global Select Market, and New Telesat is also considering a listing for its shares on a Canadian stock exchange. New Telesat's governance provisions will contain special features designed to maintain majority Canadian board and voting control.
>
> In addition, Loral announced that its Board of Directors has declared a special dividend of $1.50 per share for an aggregate dividend of approximately $46.4 million. The dividend is payable on December 17, 2020 to holders of record of Loral voting and non-voting common stock as of the close of business on December 4, 2020.
>
> Michael B. Targoff, Vice Chairman of Loral, said, "The transaction announced today reflects our long-standing efforts to maximize value for Loral stockholders. This transaction will consolidate all of the equity ownership of Telesat in the capital structure of New Telesat and will bring substantial benefits to Loral stockholders. In addition to affording Telesat the benefits of being a publicly traded Canadian company through New Telesat, Loral stockholders may elect to hold their interests directly in New Telesat, which should over time lead to improved liquidity. We are extremely pleased to have finally achieved this

result." Commenting on the declaration of the special dividend, Mr. Targoff said, "At Loral, we have now fulfilled our stated intention to distribute substantially all of our cash to stockholders except for what is needed to fund working capital and certain other liabilities."

Dr. Mark H. Rachesky, Chairman of the Board of Directors of Loral, said, "The conclusion of this transaction represents an important milestone in our plan to deliver significant value to all Loral stockholders. Telesat is revolutionizing the provision of broadband internet connectivity worldwide by developing the most advanced constellation of low earth orbit (LEO) satellites and integrated terrestrial infrastructure ever conceived. The ownership structure of New Telesat will facilitate access to the capital markets for continued advancement of LEO, positioning New Telesat for substantial growth to further enhance shareholder value."

Regarding today's dividend declaration, Dr. Rachesky said, "The Loral Board has worked diligently over the last decade to maximize value for shareholders, first, by successfully turning around and selling our former satellite manufacturing business for over $1 billion and next by using the strong free cash flow generated at Telesat to enable Telesat to invest in its state-of-the-art satellite fleet and to pay extraordinary dividends. In addition to the significant equity interest in New Telesat that the Loral stockholders will collectively receive in the transaction, the Loral Board has delivered to stockholders cash dividends, including the dividend declared today, of over $49 per share, or an aggregate in excess of $1.5 billion."

The definitive agreement provides for Loral stockholders to receive, at their election and subject to the terms and conditions of the definitive agreement, shares of New Telesat or limited partnership units of a Canadian partnership (Telesat Partnership), which limited partnership units will be exchangeable by the holder for shares of New Telesat. New Telesat will be the controlling general partner of Telesat Partnership. While the exchange of Loral stock for shares of New Telesat is anticipated to be taxable to U.S. stockholders to the extent of any gain, it is anticipated that Loral U.S. stockholders that elect to receive limited partnership units of Telesat Partnership in lieu of receiving shares of New Telesat will do so on a tax deferred basis. The limited partnership units of Telesat Partnership, while not transferable, will otherwise have substantially the same economic and voting rights as the shares of New Telesat. Loral stockholders who elect to receive limited partnership units of Telesat Partnership will, however, like all other holders of limited partnership units of Telesat Partnership, be required to hold their units for at least six months following closing of the transaction before they may exchange their limited partnership units of Telesat Partnership for shares of New Telesat. The exchange of limited partnership units of Telesat Partnership for shares of New Telesat is anticipated to be a taxable transaction to U.S. stockholders.

The definitive agreement also provides for PSP Investments to exchange substantially all of its interests in Telesat for limited partnership units of Telesat

Partnership, with the balance of its interests in Telesat being exchanged for shares in New Telesat. Other holders of Telesat shares and derivatives have the option to exchange their equity or retain their direct interests in Telesat (the beneficial ownership percentages referred to in this press release assume that such shareholders will exchange their interests in Telesat for shares of New Telesat).

Loral and Telesat will also make certain cash payments to PSP Investments in connection with the transaction, including a payment of $7 million and a payment to adjust for the value of Loral's non-Telesat assets and liabilities at the time of the closing of the transaction.

The transaction, which is subject to customary closing conditions, including approval by Loral stockholders (as further described below) and certain regulatory approvals, is expected to close in the second or third quarter of 2021. As of November 23, 2020, there were outstanding 21,427,078 shares of Loral voting common stock, 9,505,673 shares of Loral non-voting common stock and 92,857 Loral restricted stock units.

Loral's Board of Directors has set a record date of November 30, 2020 for stockholders entitled to vote at the stockholder meeting to be held to approve the transaction (the stockholder meeting). The record date is subject to change based on the timing of the mailing of the proxy statement for the stockholder meeting. The MHR Funds have entered into an agreement to vote 30% of the shares of outstanding Loral voting common stock in favor of the transaction. In addition to the approval of the transaction by the holders of a majority of the outstanding Loral voting common stock, the transaction is also subject to approval (the Majority of the Unaffiliated Vote) by holders of the majority of the outstanding voting common stock held by Loral stockholders not affiliated with PSP Investments, the MHR Funds or other transaction participants (Unaffiliated Shares).

In addition, in connection with the transaction, the Loral Board of Directors has adopted a shareholder rights plan that would be triggered if a party (other than the MHR Funds) acquires or announces the intention to acquire shares of Loral voting common stock such that after giving effect to the acquisition the party would own more than 15% of the Unaffiliated Shares, or for those Loral stockholders (other than the MHR Funds) already over such 15% threshold, if such stockholder increases its ownership of such Unaffiliated Shares by 0.001% or more. The shareholder rights plan will expire immediately upon the first to occur of receipt of the Majority of the Unaffiliated Vote, termination of the definitive transaction agreement and November 23, 2021. The MHR Funds have also entered into a separate standstill agreement prohibiting the MHR Funds and their affiliates from acquiring more than an additional 6% of the outstanding shares of Loral voting common stock prior to the conclusion of the stockholder meeting.

An independent special committee of the Loral Board (the Special Committee) and the Loral Board received a fairness opinion from Loral's financial advisor, LionTree Advisors LLC (LionTree). The Special Committee and the Loral Board each approved the transaction and determined it to be fair to the Loral stockholders not affiliated with the MHR Funds. The definitive transaction agreement was also approved by the Board of Directors of each of PSP Investments and Telesat.

In connection with the transaction, LionTree and Credit Suisse Securities (USA) LLC acted as financial advisors, Willkie Farr & Gallagher LLP acted as legal counsel, McCarthy Tétrault LLP acted as Canadian legal counsel, and DLA Piper LLP acted as U.S. tax counsel, to Loral. Cleary Gottlieb Steen & Hamilton LLP acted as legal counsel, and Goodmans LLP acted as Canadian legal counsel, to the Special Committee.

\* \* \*

21. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Loral's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.   **The Materially Incomplete and Misleading Registration Statement**

22. On April 26, 2021 Loral and Telesat jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

23. Other than a summary of expenses and other cash expenditures for Loral and Telesat, the Registration Statement fails to provide financial projections by management and relied upon by LionTree in its analyses. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

24. Projections are especially material in stock-for-stock transaction, where Loral stockholders will own equity in a new entity and the prospect of their new ownership.

25. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide financial projections for both Loral and Telesat to render the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

26. With respect to LionTree's *Net Value Impact to Loral Stockholders (other than Excluded Parties) Analysis* for the Company, the Registration Statement fails to disclose: (i) the inputs and assumptions for using a 7.5% discount rate to calculate the inversion tax liability in connection with the Proposed Transaction; (ii) the inputs and assumptions for using a discount rate ranging from 7% to 8% to calculate the net present value of Telesat's incremental costs; (iii) the inputs and assumptions for calculating the payments to be made at the closing of the Proposed Transaction under the Merger Agreement; (iv) the inputs and assumptions used to calculate the undiscounted net value of the cash benefit of Loral's deferred tax assets; and (v) the inputs and assumptions used to estimate that Loral will save approximately $12 million in cash expenditures

9

per year following the Proposed Transaction and the basis for using a discount rate ranging between 7% and 8%.

27. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

28. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

29. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

30. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things,

the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

31. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

32. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

33. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

34. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35. The Individual Defendants acted as controlling persons of Loral within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Loral, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Loral, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

36. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

37. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Loral, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

38. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

39. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

40. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

41. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 5, 2021　　　　　　　　　　　　　　**MELWANI & CHAN LLP**

　　　　　　　　　　　　　　　　　　　By:　*/s/ Gloria Kui Melwani*
　　　　　　　　　　　　　　　　　　　　　　Gloria Kui Melwani (GM5661)
　　　　　　　　　　　　　　　　　　　　　　1180 Avenue of the Americas, 8th Fl.
　　　　　　　　　　　　　　　　　　　　　　New York, NY 10036
　　　　　　　　　　　　　　　　　　　　　　Telephone: (212) 382-4620
　　　　　　　　　　　　　　　　　　　　　　Email: gloria@melwanichan.com